IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHIELD OUR CONSTITUTIONAL          :
RIGHTS AND JUSTICE, et al.
                                   :

     v.                            :     Civil Action No. DKC 09-0940

                                   :

RYAN L. HICKS
                                   :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this action are: (1) a motion to dismiss or for summary judgment filed by Defendant Ryan Hicks (Paper 4); and (2) a motion for summary judgment filed by Plaintiffs Shield Our Constitutional Rights and Justice ("Shield"), George McDermott, and Qihui Huang. (Paper 7).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted and Plaintiffs' motion will be denied as moot.

### I.   Background

This action arises from Plaintiff Qihui Huang's purchase of a residential property from homebuilder Centex Homes. Plaintiffs in this action are Ms. Huang, the home purchaser, Shield, a non-profit organization that "help[s] and support[s] victims of unlawful actions, and George McDermott, a "media worker."  (Paper 1 ¶¶ 5-6).  Defendant is the current Town

Manager of the Town of Indian Head (the "Town") and was Code Enforcement Officer of the Town at the time of the events giving rise to this lawsuit.

In or about 2004, Ms. Huang contracted to buy a house at 150 Riverwatch Drive in Indian Head, Maryland. As the purchaser, Ms. Huang put down a deposit and contracted to close on the property after a Use and Occupancy permit ("U&O") permit was issued from the town of Indian Head. Centex was required to obtain a U&O permit prior to transferring the property to Ms. Huang. On November 8, 2004, when construction on the property had been substantially completed, Planchek, Inc., the independent inspector hired by the Town, certified the property as ready for a U&O. Defendant subsequently granted a U&O to Centex on November 9, 2004. On November 24, 2004, Ms. Huang attended settlement and closed on the property.

In December 2004, Planchek informed the Town that Centex construction equipment had caused some damage to the side yard of Ms. Huang's property. Centex offered to fix the damage to Ms. Huang's yard. When Centex attempted to sod Ms. Huang's yard, she refused to allow them onto the property to repair the damage to the landscaping. Instead, Ms. Huang sought help from the Town, claiming that Centex forced her to settle on the property even though the property had incomplete grading,

landscaping, and had cliffs and ditches on the side yard. The Town inquired as to whether the U&O permit had been approved in error. The inspector, Richard Wilcher, informed that Town that at the time he conducted the inspection, the condition of the property was sufficient to permit the authorization of a U&O permit. Ronald Young, Town Manager at the time of Ms. Huang's inquiry, informed that the permit was properly issued.

The Town informed Ms. Huang on December 15, 2004 that if she did not allow Centex to enter the property to complete the work, she would assume responsibility for fixing the damage. The Town sent Ms. Huang a second letter on February 1, 2005, reiterating that if she did not allow Centex on the property to make repairs, she would be responsible for repairing the damage.

Instead of allowing Centex to fix the damage or having it fixed herself, Ms. Huang filed a series of lawsuits. Ms. Huang has initiated at least ten different lawsuits against every party involved in the sale of the property, or in the application, approval, and issuance of the U&O permit, including the homebuilder, Centex, a former field manager for Centex, Adam Tippett, CTX Mortgage Company, Commonwealth Title, Planchek, Inc., the inspector, Mr. Wilcher, the Town of Indian Head, former Town Manager Ronald Young, and former mayor of Indian Head, Edward Rice. The case against Planchek, which was filed

in the Circuit Court for Charles County, was tried before a jury on April 16 and 17, 2008.  Defendant testified during the trial. The jury returned a verdict in favor of the defendants.  Ms. Huang filed an appeal of the judgment to the Court of Special Appeals of Maryland.

Ms. Huang, along with Shield and Mr. McDermott, filed a complaint in this court on April 14, 2009 asserting six counts: (1) violations of state law for failure to revoke the U&O permit; (2) violations of the Freedom of Information Act ("FOIA") and the Maryland Information Act for failure to provide public information; (3) abuse of power and breach of official duty; (4) violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985; (5) violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, 3604, 3605, and 3617; and (6) violation of Article III, § 50 of the Maryland Declaration of Rights.  Plaintiffs seek revocation of the allegedly false U&O permit, and actual, compensatory, punitive, and exemplary damages.  Defendant filed a motion to dismiss or for summary judgment on June 2, 2009. (Paper 4).  Plaintiffs subsequently filed a motion for summary judgment on June 18, 2009.  (Paper 7).

## II.  Subject Matter Jurisdiction

As a threshold matter, the court must determine whether subject matter jurisdiction over Plaintiffs' claims is proper.

4

A court must satisfy itself of its own jurisdiction, even if the parties do not directly challenge it.    Indeed, the district court may raise the issue of subject matter jurisdiction *sua sponte*.  *Andrus v. Charlestone Stone Prods. Co., Inc.*, 436 U.S. 604, 608 n.6 (1978).    "[Q]uestions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'"  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999)(quoting 2 James Wm. Moore et al., Moore's Federal Practice & Procedure § 12.30[1] (3[d] ed. 1998)).   "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).   The plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in the federal court.   *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  First, a complaint must allege a sufficient basis for exercise of subject matter jurisdiction. Then, it is possible that the jurisdictional facts might be challenged.  If so, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.

Plaintiffs invoke this court's jurisdiction on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332.

### A.   Diversity Jurisdiction

28 U.S.C. § 1332 requires complete diversity of citizenship and an amount in controversy over $75,000.   In order for complete diversity to be established, none of the defendants can be a citizen of the same state as any of the plaintiffs. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *Strawbridge v. Curtiss*, 7 U.S. 3 (Cranch) 267 (1806). Plaintiffs' allegation of diversity jurisdiction fails because Plaintiff Huang and Defendant are both citizens of Maryland.

### B.   Federal Question Jurisdiction

Generally, whether any of a plaintiff's claims "arise under" federal law is determined by the application of the well-pleaded complaint rule. *Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC*, 595 F.Supp.2d 618, 621 (D.Md. 2009)(citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)).   This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Plaintiffs allege claims under federal statutes, although none survive under Fed.R.Civ.P. 12(b)(6) as explained below.

### C. Supplemental Jurisdiction

Because the court will dismiss all claims over which it has original jurisdiction, pursuant to 28 U.S.C. § 1367(c) the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, only Plaintiff's federal law claims are analyzed under Fed.R.Civ.P. 12(b)(6) below.

### III. Motion to Dismiss or for Summary Judgment

### A. Standard of Review

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment under Fed.R.Civ.P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. The court need not consider documents outside the pleadings to resolve the pending motions. Therefore, the court will treat Defendant's motion as a motion to dismiss.

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 513 (2002), which requires a "short and plain statement of
the claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).    Nevertheless, "Rule 8(a)(2) still
requires a 'showing,' rather than a blanket assertion, of
entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 555 n.3 (2007).   That showing must consist of more than "a
formulaic recitation of the elements of a cause of action" or
"naked assertion[s] devoid of further factual enhancement."
*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal
citations omitted).

In its determination, the court must consider all well-pled
allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.
266, 268 (1994), and must construe all factual allegations in
the light most favorable to the plaintiff.   *See Harrison v.
Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.
1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th
Cir. 1993)).   The court need not, however, accept unsupported
legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d
870, 873 (4th Cir. 1989), legal conclusions couched as factual
allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual
allegations devoid of any reference to actual events, *United
Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).
"[W]here the well-pleaded facts do not permit the court to infer

8

more than the mere possibility of misconduct, the complaint has
alleged, but it has not 'show[n] . . . that the pleader is
entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting
Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint
states a plausible claim for relief will . . . be a context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense." *Id.* Finally, while
courts generally should hold *pro se* pleadings "to less stringent
standards than formal pleadings drafted by lawyers," they may
nonetheless dismiss complaints that lack a cognizable legal
theory or that fail to allege sufficient facts under a
cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520
(1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002),
*aff'd*, 121 Fed.Appx. 9 (4th Cir. 2005)(unpublished).

**B.  Analysis**

**1.  Standing**

To assert standing under Article III, a plaintiff must show
(1) actual or threatened injury that is both concrete and
particularized, and not conjectural or hypothetical; (2) injury
fairly traceable to the defendant's challenged action; and (3)
injury likely redressable by a favorable court decision. *Burke
v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998)(citing
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Defendant argues that neither Shield nor McDermott has standing to bring any claims in this action.

### a.   Plaintiff Shield Our Constitutional Rights

An organization such as Shield may show standing to bring a suit under two theories: standing in its own right or representational standing, based on the fact that members it represents have been harmed. *Md. Highways Contractors Ass'n., Inc. v. State of Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991), *cert. denied*, 502 U.S. 939 (1991)(citations omitted).   It is unclear whether Plaintiffs assert that Shield has standing in its own right or representational standing.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), is the seminal case regarding organizational standing, at least under the Fair Housing Act ("FHA").   In that case, the Court stated:

> If, as broadly alleged, petitioners'
> steering practices have perceptibly impaired
> HOME's ability to provide counseling and
> referral services for low - and moderate -
> income home-seekers, there can be no
> question that the organization has suffered
> injury in fact.   Such concrete and
> demonstrable injury to the organization's
> activities - with the consequent drain on
> the organization's resources - constitutes
> far more than simply a setback to the
> organization's abstract social interests . .
> . .

*Id.* at 379.

As noted above, Plaintiff Shield is an organization that "help[s] and support[s] victims of unlawful actions." (Paper 1 ¶ 5). Plaintiffs allege that Shield "spent money on courts, attorneys, times [sic], and efforts to help the victim pursue fair and just treatment in lawsuits . . . [and] through its members, staff and counsel, have spent time, efforts and costs to help the victim seek rights protected by Constitutions and Statutes." (*Id.* ¶¶ 25, 29).

Although unclear, Plaintiffs appear to allege that Shield suffered injury as a result of having to divert its resources from other programs in order to assist Plaintiff Huang. However, Plaintiffs fail to allege any specific facts to substantiate this bald allegation. In *Equal Rights Ctr. v. Equity Residential*, 483 F.Supp.2d 482 (D.Md. 2007), the Equal Rights Center ("ERC"), a non-profit organization, sued the owner of apartment buildings alleging a nationwide practice of violating the FHA. The court held that ERC's allegations were sufficient to establish organization standing. The court explained:

> [P]laintiff has amply alleged facts showing a causal connection between plaintiffs injury and defendants' conduct. Taking the allegations of the complaint as true, defendants own and/or operate 300 properties which, in one or more ways, limit access to persons with disabilities and thus violate federal law. Specifically, through its

> investigation over a period of two years,
> plaintiff has found 'design and construct'
> violations in 61 of defendants' properties.
> Moreover, because, as plaintiff alleges, the
> tested properties share various combinations
> of common design elements with the untested
> properties, plaintiff may permissibly and
> reasonably allege on 'information and
> belief' the existence of violations at each
> of the properties named in the complaint.
> Plainly, plaintiffs allege facts that
> demonstrate that the defendants' actions
> 'have caused the organization to divert
> resources to identify and counteract the
> defendants' unlawful practices,' and thereby
> impede and frustrate its core mission, which
> is, through 'education, counseling,
> advocacy, enforcement, and referral services
> to aid protected individuals.'

*Id.* at 487.

Here, Plaintiffs' complaint is devoid of any facts to similar to those in *Equity Residential* and are insufficient to establish organizational standing. Plaintiffs' conclusory assertions are insufficient to establish organizational standing. Accordingly, Plaintiff Shield will be dismissed from this action for lack of standing.

**b.   Plaintiff McDermott**

Plaintiffs' allegations are wholly insufficient to demonstrate that McDermott has standing to bring this action. Plaintiffs allege that McDermott "questions [sic], but did not receive proper answers from Defendant. [McDermott] claims that Defendant breached his duties, and violated federal Freedom of

Information Act and Maryland Public Information Act."
(Paper 1 ¶ 6). Plaintiffs fail to allege that McDermott
suffered an injury caused by Defendant's conduct that could be
redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-
61. Accordingly, McDermott's complaint against Defendant will
be dismissed. Therefore, the remaining claims will be addressed
only with respect to the remaining Plaintiff, Ms. Huang.

   **2.   Statute of Limitations**

   Defendant asserts that Plaintiff Huang's federal civil
rights claims under §§ 1981, 1982, 1983, and 1985 of Title 42
are barred by a three year statute of limitations and that
Plaintiff's FHA claims are barred by a two year statute of
limitations.

   Here, the U&O permit that Plaintiff Huang contends should
be revoked was issued on November 9, 2004 and the alleged forced
settlement on the property occurred on November 24, 2004, more
than four years before she filed her complaint on April 14,
2009. Plaintiff argues that the statute of limitations does not
bar her claims. Specifically, Plaintiff alleges her lawsuit is
based the following: (1) Defendant's testimony on April 17, 2008
in an earlier case regarding the U&O permit; and (2) Defendant's
alleged failure to provide information and failure to revoke the
U&O permit after on and after July 30, 2008.

The Reconstruction Civil Rights Acts, which include 42 U.S.C. §§ 1981, 1982, 1983, and 1985, do not specifically provide a statute of limitations during which time claims may be brought. *McCausland v. Mason County Bd. Of Educ.*, 649 F.2d 278, 279 (4th Cir. 1981). Therefore, the federal courts borrow an appropriate limitations period from the state in which the claims arose. *Id.*

Maryland's general statute of limitations provides that "[a] civil action at law shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101. The time of accrual is "when [the] plaintiff knows or has reason to know of the injury which is the basis of the action." *Nat'l Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1162 (4th Cir. 1991), *cert. denied*, 504 U.S. 931 (1992). Courts have applied the three year period to claims brought under §§ 1982, 1983, and 1985. *See, e.g., Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002); *Evans v. Chesapeake & Potomac Telephone Co. of Md.*, 535 F.Supp. 499 (1982). Accordingly, the three year statute of limitations bars recovery for any events that occurred before April 14, 2006.

With respect to claims arising under 42 U.S.C. § 1981, the limitations period for suit in Maryland is generally three years. *Int'l Woodworkers of America v. Chesapeake Bay*, 659 F.2d

1259 (4th Cir. 1981).  Under 20 U.S.C. § 1658, Congress enacted a
catch-all four year statute of limitations for causes of action
that arose under an Act of Congress enacted after December 1,
1990.  The Civil Rights Act of 1991 amended 42 U.S.C. § 1981.
Accordingly, any new causes of action that arose as a result of
the 1991 Act are now governed by the four year statute of
limitations, and not the personal injury limitations period
established in the forum state, such as the three year period in
Maryland.  *See Jones v. R.R. Donnelley & Sons*, 541 U.S. 369,
371-72 (2004).

Here, Plaintiff's claim under § 1981 is based on alleged
race discrimination and a denial of equal protection under the
Fourteenth Amendment.  Plaintiff's cause of action arose under §
1981 as originally enacted, so the three year statute of
limitations period governs her § 1981 claim.  Therefore, the
court will limit the analysis of these claims to acts occurring
on or after April 14, 2006, three years before Plaintiff filed
her complaint.

Additionally, Plaintiff Huang's FHA claims are barred by a
two year statute of limitations.  A civil action claiming
liability under the FHA must be filed no later than two years
after "the occurrence or termination of an allegedly
discriminatory housing practice." 42 U.S.C. § 3613.  Therefore,

15

the court will limit its analysis of Plaintiff's FHA claims to acts occurring on or after April 14, 2007, two years before Plaintiffs filed their complaint.

### 3.   Failure to State a Claim

Plaintiff alleges federal claims under FOIA, 42 U.S.C. §§ 1981, 1982, 1983, and 1985, and the FHA.

### a.   Freedom of Information Act

Plaintiff alleges that she requested information from Defendant several times, but Defendant failed to respond. (Paper 1 ¶ 43-45).   Plaintiff asserts that Defendant intentionally violated FOIA by failing to provide public information.

Plaintiff's claim under FOIA fails because the statute is not applicable to state agencies.   FOIA requires that government agencies disclose publically available records upon request. 5 U.S.C.A. § 552.   Government agencies are defined as certain entities under the authority of the United States government. *See* § 551.   Defendant is a municipal officer of the Town of Indian Head, Maryland, not an officer of a federal agency subject to FOIA.   Accordingly, the claim under FOIA in count II will be dismissed.

**b.    42 U.S.C §§ 1981, 1982, 1983, and 1985**

As noted above, Plaintiff's claims under §§ 1981, 1982, 1983, and 1985 are limited to events that occurred after April 14, 2006.  The complaint is devoid of any facts related to a civil rights violation occurring after April 14, 2006

First, Plaintiff has not stated a claim under §§ 1981, 1982, or 1983.  Plaintiff asserts that she requested information from Defendant related to the U&O permit, but fails to allege that any of Defendant's actions were motivated by discriminatory intent.

Likewise, Plaintiff has not stated a claim under § 1985. To state a § 1985(3) claim, Plaintiffs must prove: "(1) a conspiracy of two or more persons (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)); *see also Mears v. Town of Oxford, Md.*, 762 F.2d 368, 374 (4th Cir. 1985)(explaining that a plaintiff must show that a defendant's actions were motivated by

17

race)(citations omitted). Plaintiff's complaint is devoid of any factual allegations regarding the existence of a conspiracy motivated by specific class-based, invidiously discriminatory animus.  Indeed, Plaintiff fails even to allege any agreement involving Defendant to engage in any overt act, much less any agreement to engage in discrimination.

Accordingly, count IV will be dismissed.

### c.  Fair Housing Act

The FHA, also known as Title VIII of the Civil Rights Act of 1968, prohibits public and private parties from engaging in certain discriminatory activities as part of ensuring "fair housing throughout the United States."  42 U.S.C. § 3601. Plaintiff Huang's FHA claim must fail because there is no allegation that Defendant refused to sell Plaintiff a property or rejected her for a loan.  Plaintiff has not alleged any facts demonstrating that Defendant had any involvement with the sales contract for her home.  As a result, Plaintiff Huang cannot state any claim under the FHA against Defendant and count V will be dismissed.

## IV.  Conclusion

Because Plaintiff has not stated any claim involving a federal question and because the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims,

18

Plaintiff's entire complaint will be dismissed.   Accordingly, Defendant's motion will be granted.   Because Plaintiff's complaint will be dismissed, Plaintiff's motion for summary judgment will be denied as moot.   A separate Order will follow.

                          /s/
               _____
               DEBORAH K. CHASANOW
               United States District Judge